**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| **JURNEE SCOTT LEYMAN** )<br>**Individually, and as Administrix** )<br>**of the ESTATE OF NOAH M. LEYMAN,** )<br>**Deceased** )<br>100 Cynthia Way )<br>Warner Robins, Georgia 31088 )<br> )<br>    **Plaintiff,** )<br> )<br>**v.** )<br> )<br> )<br> )<br>**AMAZON LOGISTICS, INC.** )<br>C/O Corporation Service Company, )<br>3366 Riverside Drive, Suite 103, )<br>Upper Arlington, Ohio 43221 )<br> )<br>**AMAZON LOGISTICS, LLC** )<br>C/O Corporation Service Company, )<br>300 Deschutes Way SW )<br>Ste. 208 MC-CSC1 )<br>Tumwater, Washington 98501 )<br> )<br>**AMAZON.COM, INC.** )<br>C/O Corporation Service Company, )<br>300 Deschutes Way SW )<br>Ste. 208 MC-CSC1 )<br>Tumwater, Washington 98501 )<br> )<br>**AMAZON.COM SALES, INC.** )<br>C/O Corporation Service Company, )<br>300 Deschutes Way SW )<br>Ste. 208 MC-CSC1 )<br>Tumwater, Washington 98501 )<br> )<br>**AMAZON.COM SERVICES, LLC** )<br>C/O Corporation Service Company, )<br>300 Deschutes Way SW )<br>Ste. 208 MC-CSC1 )<br>Tumwater, Washington 98501 )<br> )<br>**AMAZON WEB SERVICES, INC.** ) | **Case No.** 1:23-CV-828 _____<br><br>**Judge**_____<br><br><br><br>**COMPLAINT WITH JURY**<br>**DEMAND ENDORSED HEREON** |

C/O Corporation Service Company,                    )
3366 Riverside Drive,                               )
Suite 103                                           )
Upper Arlington, Ohio 43221.                        )
                                                    )
**TIMUR TRUCKING, LLC**                             )
C/O Kamoliddin Adilov,                              )
14114 Lebanon Road                                  )
Cincinnati, Ohio 45241                              )
                                                    )
**FIRDAVS KUBAEV**                                  )
5829 Sterling Lakes Circle                          )
Apartment 205                                       )
Mason, Ohio 45040                                   )
                                                    )
**ERGASH ANNAKUKOV**                                )
685 Berkshire Lane                                  )
South Lebanon, Ohio 45065                           )
                                                    )
**KAMILODDIN ADILOV**                               )
8046 Big Oak Circle                                 )
Mason, Ohio 45040                                   )
                                                    )
            **Defendants.**                         )

Plaintiffs, **JURNEE SCOTT LEYMAN**, individually and in her capacity as the duly appointed Administrix and representative of the **ESTATE OF NOAH M. LEYMAN**, deceased, hereby files Plaintiffs' Complaint for Damages, showing as follows:

## INTRODUCTION

1.      This is a personal injury, wrongful death, loss of consortium, and survival action to recover for the injuries of Jurnee Scott Leyman and the injuries and death of Noah M. Leyman.

2.      Plaintiff was injured and Mr. Leyman was injured and died as result of a tractor-trailer wreck that occurred on or about June 4, 2023.

3.      As a result of the Defendants' respective negligence, recklessness, and wantonness as described below, Noah M. Leyman was killed and suffered pre-impact fright and physical and

mental pain and suffering, Ms. Leyman was severely injured, and Ms. Leyman and next of kin and other heirs have suffered permanent damages and losses.

## PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff, **JURNEE SCOTT LEYMAN, INDIVIDUALLY, AND AS ADMINISTRIX/REPRESENTATIVE OF THE ESTATE OF NOAH M. LEYMAN**, is over the age of nineteen (19) and a resident of the State of Georgia.

5.     Ms. Leyman is the surviving spouse of Noah M. Leyman, deceased, and at all times relevant, Mr. Leyman and Ms. Leyman were husband and wife.

6.     In addition to bringing this action in her individual capacity, Ms. Leyman brings this action according to letters of authority issued by the Probate Court of Houston County, Georgia, Case No. 2023-ES-361, and as administratrix and representative of the Estate of Noah M. Leyman. (*See* Letters of Administration are attached as Exhibit "1.")

7.     Plaintiff brings a wrongful death action and survivorship action on behalf of the Estate and the next of kin and beneficiaries of Mr. Leyman under Ohio Rev. Code Ann. § 2125.

8.     Plaintiff individually suffered severe physical and mental personal injuries in the subject wreck, and therefore, also brings individual personal injury and loss of consortium claims against the Defendants.

9.     Defendant, **AMAZON LOGISTICS, INC.,** is a corporation formed under the laws of Delaware, with its principal place of business in Seattle, Washington, and operates throughout the United States, including within Ohio. Amazon Logistics, Inc. is registered to do business in the State of Ohio and may be served with process via its registered agent, Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, Franklin County, Ohio 43221.

10. This Court has personal jurisdiction over Defendant Amazon Logistics under Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382, because Defendant Amazon Logistics has, directly or by an agent:

    a) Transacted business and maintained a business presence within the State of Ohio;

    b) Contracted to supply services or goods in the State of Ohio;

    c) Caused tortious personal injury to Plaintiffs and by acts or omissions within the State of Ohio; and,

    d) Regularly does or solicits business and engages in a persistent course of conduct within the State of Ohio and derives substantial revenue from goods used or consumed or services rendered within the State of Ohio.

11. Defendant Amazon Logistics, Inc., is subject to the jurisdiction of this Court because its acts and omissions are based upon substantial contacts with the State of Ohio, including but not limited to:

    a) Engaging in a systematic pattern of business operations, including the warehousing, delivery, and transport of goods within and through the State of Ohio using the roadways of and within the State of Ohio;

    b) The warehousing of goods and products within the State of Ohio;

    c) Engaging in solicitation activities in the State of Ohio to promote the sale, consumption, and use of its services;

    d) Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in Ohio by delivering and distributing products via its trucking and transportation operations.

12. Defendant Amazon Logistics, Inc. has such sufficient minimum contacts within the State of Ohio that are purposefully directed to the State of Ohio that the filing of this action does not offend traditional notions of fair play and substantial justice.

13. Defendant, **AMAZON LOGISTICS, LLC**, is a limited liability company formed under the laws of Delaware, with its principal place of business in Seattle, Washington, and

operates throughout the United States, including within Ohio and this judicial district. Amazon Logistics, LLC does not maintain a registered agent for service of process in the State of Ohio and may be served with process through its registered agent for service of process in the State of Washington, Corporation Service Company, 300 Deschutes Way SW, Ste. 208 MC-CSC1, Tumwater, Washington 98501.

14.    This Court has personal jurisdiction over Defendant Amazon Logistics, LLC under Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382, because Defendant Amazon Logistics, LLC has, directly or by an agent:

    a)  Transacted business and maintains a business presence within the State of Ohio;

    b)  Contracted to supply services or goods in the State of Ohio;

    c)  Caused tortious personal injury to Plaintiffs and by acts or omissions within the State of Ohio; and,

    d)  Regularly does or solicits business and engages in a persistent course of conduct within the State of Ohio and derives substantial revenue from goods used or consumed or services rendered within the State of Ohio.

15.    Defendant Amazon Logistics, LLC, is subject to the jurisdiction of this Court because its acts and omissions are based upon substantial contacts with the State of Ohio, including but not limited to:

    a)  Engaging in a systematic pattern of business operations, including the warehousing, delivery, and transport of goods within and through the State of Ohio using the roadways of and within the State of Ohio;

    b)  The warehousing of goods and products within the State of Ohio;

    c)  Engaging in solicitation activities in the State of Ohio to promote the sale, consumption, and use of its services;

    d)  Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in Ohio by delivering and distributing products via its trucking and transportation operations.

16.     Defendant Amazon Logistics, LLC, has such sufficient minimum contacts within the State of Ohio that are purposefully directed to the State of Ohio that the filing of this action does not offend traditional notions of fair play and substantial justice.

17.     Defendant, **AMAZON.COM, INC.**, is a corporation formed under the laws of Delaware, with its principal place of business in Seattle, Washington, and operates throughout the United States, including within Ohio. Amazon.Com, Inc. does not maintain a registered agent for service of process in the State of Ohio and may be served with process through its registered agent for service of process in the State of Washington, Corporation Service Company, 300 Deschutes Way SW, Ste. 208 MC-CSC1, Tumwater, Washington 98501.

18.     This Court has personal jurisdiction over Defendant Amazon.com, Inc. under Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382, because Defendant Amazon.com, Inc. has, directly or by an agent:

    a)  Transacted business and maintains a business presence within the State of Ohio;

    b)  Contracted to supply services or goods in the State of Ohio;

    c)  Caused tortious personal injury to Plaintiffs and by acts or omissions within the State of Ohio; and,

    d)  Regularly does or solicits business and engages in a persistent course of conduct within the State of Ohio and derives substantial revenue from goods used or consumed or services rendered within the State of Ohio.

19.     Defendant Amazon.com, Inc., is subject to the jurisdiction of this Court because its acts and omissions are based upon substantial contacts with the State of Ohio, including but not limited to:

    a)  Engaging in a systematic pattern of business operations, including the warehousing, delivery, and transport of goods within and through the State of Ohio using the roadways of and within the State of Ohio;

    b)  The warehousing of goods and products within the State of Ohio;

    c)   Engaging in solicitation activities in the State of Ohio to promote the sale, consumption, and use of its services;

    d)   Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in Ohio by delivering and distributing products via its trucking and transportation operations.

20.   Defendant Amazon.com, Inc., has such sufficient minimum contacts within the State of Ohio that are purposefully directed to the State of Ohio that the filing of this action does not offend traditional notions of fair play and substantial justice.

21.   Defendant, **AMAZON.COM SALES, INC.,** is a corporation formed under the laws of Delaware, with its principal place of business in Seattle, Washington, and operates throughout the United States, including within Ohio. Amazon.com Sales, Inc. does not maintain a registered agent for service of process in the State of Ohio and may be served with process through its registered agent for service of process in the State of Washington, Corporation Service Company, 300 Deschutes Way SW, Ste. 208 MC-CSC1, Tumwater, Washington 98501.

22.   This Court has personal jurisdiction over Defendant Amazon.com Sales, Inc. under Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382, because Defendant Amazon.com Sales, Inc. has, directly or by an agent:

    a)   Transacted business and maintains a business presence within the State of Ohio;

    b)   Contracted to supply services or goods in the State of Ohio;

    c)   Caused tortious personal injury to Plaintiffs and by acts or omissions within the State of Ohio; and,

    d)   Regularly does or solicits business and engages in a persistent course of conduct within the State of Ohio and derives substantial revenue from goods used or consumed or services rendered within the State of Ohio.

23. Defendant Amazon.com Sales, Inc., is subject to the jurisdiction of this Court because its acts and omissions are based upon substantial contacts with the State of Ohio, including but not limited to:

    a) Engaging in a systematic pattern of business operations, including the warehousing, delivery, and transport of goods within and through the State of Ohio using the roadways of and within the State of Ohio;

    b) The warehousing of goods and products within the State of Ohio;

    c) Engaging in solicitation activities in the State of Ohio to promote the sale, consumption, and use of its services;

    d) Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in Ohio by delivering and distributing products via its trucking and transportation operations.

24. Defendant Amazon.com Sales, Inc. has such sufficient minimum contacts within the State of Ohio that are purposefully directed to the State of Ohio that the filing of this action does not offend traditional notions of fair play and substantial justice.

25. Defendant, **AMAZON.COM SERVICES LLC**, is a limited liability company formed under the laws of Delaware, with its principal place of business in Seattle, Washington, and operates throughout the United States, including within Ohio. Amazon.Com Services LLC does not maintain a registered agent for service of process in the State of Ohio and may be served with process through its registered agent for service of process in the State of Washington, Corporation Service Company, 300 Deschutes Way SW, Ste. 208 MC-CSC1, Tumwater, Washington 98501.

26. This Court has personal jurisdiction over Defendant Amazon.com Services LLC under Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382, because Defendant Amazon Logistics has, directly or by an agent:

    a) Transacted business and maintains a business presence within the State of Ohio;

    b) Contracted to supply services or goods in the State of Ohio;

    c) Caused tortious personal injury to Plaintiffs and by acts or omissions within the State of Ohio; and,

    d) Regularly does or solicits business and engages in a persistent course of conduct within the State of Ohio and derives substantial revenue from goods used or consumed or services rendered within the State of Ohio.

27. Defendant Amazon.com Services LLC is subject to the jurisdiction of this Court because its acts and omissions are based upon substantial contacts with the State of Ohio, including but not limited to:

    a) Engaging in a systematic pattern of business operations, including the warehousing, delivery, and transport of goods within and through the State of Ohio using the roadways of and within the State of Ohio;

    b) The warehousing of goods and products within the State of Ohio;

    c) Engaging in solicitation activities in the State of Ohio to promote the sale, consumption, and use of its services;

    d) Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in Ohio by delivering and distributing products via its trucking and transportation operations.

28. Defendant Amazon.Com Services LLC has such sufficient minimum contacts within the State of Ohio that are purposefully directed to the State of Ohio that the filing of this action does not offend traditional notions of fair play and substantial justice.

29. Defendant, **AMAZON WEB SERVICES, INC.**, is a corporation formed under the laws of Delaware, with its principal place of business in Seattle, Washington, and operates throughout the United States, including within Ohio. Amazon Web Services, Inc. is registered to do business in the State of Ohio and may be served with process via its registered agent, Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, Franklin County, Ohio 43221.

30.     This Court has personal jurisdiction over Defendant Amazon Web Services, Inc. under Ohio's long-arm statute, Ohio Rev. Code Ann. § 2307.382, because Defendant Amazon Web Services, Inc. has, directly or by an agent:

    a)  Transacted business and maintains a business presence within the State of Ohio;

    b)  Contracted to supply services or goods in the State of Ohio;

    c)  Caused tortious personal injury to Plaintiffs and by acts or omissions within the State of Ohio; and,

    d)  Regularly does or solicits business and engages in a persistent course of conduct within the State of Ohio and derives substantial revenue from goods used or consumed or services rendered within the State of Ohio.

31.     Defendant Amazon Web Services, Inc., is subject to the jurisdiction of this Court because its acts and omissions are based upon substantial contacts with the State of Ohio, including but not limited to:

    a)  Engaging in a systematic pattern of business operations, including the warehousing, delivery, and transport of goods within and through the State of Ohio using the roadways of and within the State of Ohio;

    b)  The warehousing of goods and products within the State of Ohio;

    c)  Engaging in solicitation activities in the State of Ohio to promote the sale, consumption, and use of its services;

    d)  Conducting and engaging in substantial business and other activities, including warehousing and interstate and intrastate commerce, in Ohio by delivering and distributing products via its trucking and transportation operations.

32.     Defendant Amazon Web Services, Inc. has such sufficient minimum contacts within the State of Ohio that are purposefully directed to the State of Ohio that the filing of this action does not offend traditional notions of fair play and substantial justice.

33.     Defendant, **TIMUR TRUCKING, LLC ("Timur Trucking")**, is a corporation incorporated in Ohio and with its principal place of business in the city of Mason, County of

Warren, State of Ohio. Defendants Kamoliddin Adilov, Firdavs Kubaev, and Ergash Annakukov were employed at, directed, and controlled at, and acted on behalf of each other and Timur Trucking at this location and others. Timur Trucking may be served with process via its registered agent, Kamoliddin Adilov, 14114 Lebanon Road, Cincinnati, Hamilton County, Ohio 45241.

34. Defendant, **FIRDAVS KUBAEV,** is over the age of eighteen (18) and is a resident and citizen of Warren County, Ohio. Mr. Kubaev may be served with process at 5829 Sterling Lakes Circle, Apartment 205, Mason, Warren County, Ohio 45040. This Defendant was an officer, owner, director, and supervisor at Timur Trucking.

35. Defendant, **KAMOLIDDIN ADILOV**, is over the age of eighteen (18) and is a resident and citizen of Warren County, Ohio. Mr. Adilov may be served with process at 8046 Big Oak Circle, Mason, Warren County, Ohio 45040. This Defendant was an officer, owner, director, and supervisor at Timur Trucking.

36. Defendant, **ERGASH ANNAKUKOV**, is over the age of eighteen (18) and is a resident and citizen of Warren County, Ohio. Mr. Annakukov, 685 Berkshire Ln, South Lebanon, Warren County, Ohio 45065. This Defendant was an officer, owner, director, and supervisor at Timur Trucking.

37. This District Court has subject matter jurisdiction to entertain this action under 28 U.S.C. § 1332 based upon the complete diversity of parties' citizenship and because the amount in controversy exceeds $75,000.

38. Venue is proper in Ohio and in this District and Division because a substantial part of the material events and omissions giving rise to this claim occurred in Warren County, Ohio, and the Southern District, Western Division of Ohio, and some of the individual defendants herein are citizens of Warren County, Ohio.

## FACTS

39.     Defendants Amazon Logistics, Inc., Amazon Logistics, LLC, Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, LLC, and Amazon Web Services, Inc. (collectively, "Amazon Defendants") comprise the world's largest e-commerce and delivery company.

40.     As part of a strategy to vertically integrate and take control of shipping and logistics away from third parties, such as FedEx and UPS, the Amazon Defendants have been building, refining, expanding, and using a logistics and transportation network of their own to transport goods from manufacturers and retailers to its warehouses, distribution centers, and ultimately to customers through the country, including in the State of Ohio.

41.     Amazon Logistics manages the Amazon Defendants' vast logistics and transportation network.

42.     As part of this strategy, the Amazon Defendants routinely enter contracts with shippers, transportation companies, interstate motor carriers, intrastate carriers, and local delivery partners to ensure that items purchased by the customers are picked up from the shippers and timely delivered to the customers.

43.     Amazon Defendants advertise for and contract with delivery partners to transport Amazon goods, using the website https://logistics.amazon.com/marketing/delivery-partner/."

44.     Amazon Defendants use the "Amazon Delivery Partner" website to direct motor carriers to either Amazon's "Relay" program or a similar Amazon program, where a motor carrier can work with Amazon Defendants by operating Amazon trailers full of Amazon products and delivering those products.

45. Amazon Defendants use various programs to ensure that packages are delivered rapidly, emphasizing that packages must be delivered precisely when the Amazon Defendants have scheduled to meet Amazon's promises to their end customers as to when the product would be provided.

46. Amazon "Relay" boasts short-term contracts for motor carriers and a "Load Board" where motor carriers can see exclusive work across Amazon's entire freight network, with the ability to instantly book at https://relay.amazon.com/.

47. Amazon "Relay" has a "Getting Started" page that controls and requires motor carriers to have the following:

a) An active DOT number with interstate authority and a valid MC number;

b) A "Carrier" entity type that is authorized for Property and for Hire;

c) A Federal Motor Carrier Safety Administration (FMCSA) Safety Rating of "Satisfactory," "None," or "Not Rated";

d) All required insurance policies, including:

   i. Commercial General Liability not less than $1,000,000 per occurrence and $2,000,000 in the aggregate;

   ii. Auto Liability not less than $1,000,000 per occurrence;

   iii. Cargo coverage of at least $100,000;

   iv. Workers' Compensation insurance in all jurisdictions in which the company operates; and,

   v. Employer Liability not less than $100,000 per occurrence.

48. Amazon Defendants use motor carriers that are designated as "unrated," meaning they have not passed a safety audit by the FMCSA verifying that the motor carrier has appropriate safety management controls in place to comply with the FMCSRs and to transport freight safely across the highways of the United States.

49. Amazon Defendants use these "unrated" motor carriers without further investigation or inquiry into their safety management controls and safety history.

50. Timur Trucking was such an "unrated" motor carrier and is currently under a compliance review.

51. Amazon Defendants do not conduct any safety investigation into motor carriers or truck drivers beyond verifying current operating authority, proof of insurance, and that the motor carrier does not have a safety rating of "unsatisfactory."

52. To monitor and control carrier compliance, Amazon "Relay" states that it uses various tools, internal compliance teams, and third-party compliance monitoring services to monitor continuous compliance.

53. In certain vehicles, these Amazon monitoring services include cameras and data trackers, recording the interior and exterior of Amazon vehicles in transit and tracking driver data.

54. The Amazon "Relay" electronic application also has multiple features that include but are not limited to (a) finding, booking, and delivering Amazon loads; (b) assigning drivers; (c) accessing Amazon's "Relay Board"; (d) tracking performance; (e) viewing and downloading payment details; and (f) reporting issues to Amazon.

55. Amazon Defendants exert control over the details of the work done by motor carriers and drivers using various tools, including internal compliance teams and a third-party compliance monitoring service, to monitor motor carrier compliance with their policies continually and ensure the companies deliver Amazon goods on time.

56. The "Relay" electronic application further allows drivers to view and manage load status, report delays, and use "commercial navigation."

57.     Amazon Defendants control "Relay" and require drivers, agents, and employers to use Amazon "Relay" products for all Amazon loads.

58.     Through the "Load Board" in the Amazon Relay electronic application, drivers and carriers can search for assignments in their area and book them.

59.     Amazon Defendants track and grade the performance of each driver and each carrier.

60.     Driver and motor carrier safety are not considered in Amazon Defendants' performance metrics.

61.     Motor carriers access Amazon Relay through a web browser that enables them to access a Driver Roster and to view Amazon's grading of each driver's performance, in addition to the carrier's performance overall.

62.     The Amazon Defendants present the assignments on the "Load Board" in Amazon Relay to include details such as required departure time, location for the trip, arrival, and departure time for each stop along the way, and the required arrival time at the final destination.

63.     Some loads involve connecting the motor carrier's semi-truck to a preloaded trailer and hauling the trailer to its destination in what is known as a "drop-and-hook" operation; others require the motor carrier or driver to supply the trailer.

64.     The "Relay" system uses Amazon-owned 53' dry vans that a GPS-tracking system can accompany.

65.     Motor carriers working for the Amazon Defendants do not negotiate payment; the Amazon Defendants preset the payment amount into the Load Board for each assignment.

66.     Once a motor carrier books an assignment, the carrier must then assign a driver through Amazon Relay, and the assignment appears on the driver's Amazon Relay phone application.

67.     Once the driver is assigned to the Load in the Amazon Relay phone application, the Amazon Defendants no longer communicate with the motor carrier, and all communications are directly with the truck driver.

68.     Through the Amazon Defendants' Relay application for iOS and Android devices, drivers can view and manage load status, report delays, and use commercial navigation.

69.     When a motor carrier or driver books a shipment through Amazon Relay, the Load Board generates a map for navigation by the driver, dictating the exact route the driver is to follow and identifying each stop with numbers on the map and delivery times.

70.     Drivers use the Amazon Relay application to report delays and update their estimated arrival time.

71.     Amazon Defendants, therefore, know the identity of the drivers transporting their freight and can and do control and monitor these drivers and the location of their loads through the Amazon Relay application.

72.     "Invoices" are automatically generated by the Amazon Relay application, with the pay week running Sunday to Sunday and drivers/carriers typically getting money deposited in their bank accounts the following Friday.

73.     While drivers and carriers are penalized for canceling a trip, Amazon Defendants may cancel or reschedule a load without notice at any time before the trip begins.

74.   At some time before the date of the collision at issue, Amazon Defendants controlled and contracted with Defendant Timur Trucking as part of the "Relay" system or a similar Amazon system, among other ways, for Defendant Timur Trucking to deliver Amazon products.

75.   Amazon Defendants controlled and contracted with Defendant Timur Trucking to deliver Amazon products.

76.   At all relevant times, the Amazon Defendants had non-delegable duties to ensure that the trucking companies and drivers whom they controlled and hired to deliver goods throughout the United States in tractor-trailers or other commercial motor vehicles were reasonably safe and complied with all laws, regulations, and industry standards concerning the safe operation of commercial motor vehicles on roadways in the United States.

77.   Amazon Logistics, Inc. provided a 2021 blue Hyundai translead trailer, owned by Amazon Logistics Inc., to Defendant Timur Trucking, LLC, to deliver Amazon products.

78.   On June 4, 2023, and other times material hereto, Defendants Kubaev, Adilov, and Annakukov were acting within the course and scope of their agency and employment with each other, the Amazon Defendants, and Defendant Timur Trucking and driving a red, 2019 Freightliner Cascadia, Vin No. 3AKJHHDR3KSJX1098, for the Amazon Defendants, with a 2021 blue, Hyundai translead trailer, owned by the Amazon Defendants, driving on US 287, near mile marker 123, in Potter County, Texas.

79.   The trailer at issue, in this case, was owned by Amazon Logistics, Inc., VIN No. 3H3V532C6MR733498, was blue, and publicly bore "Amazon" labeling on its exterior.

80.   At that time and continuing through the time of the collision at issue, the tractor-trailer, driven by Defendants Kubaev and Annakulov, bore the "Amazon" logo on its sides and was

directed and controlled by the Amazon Defendants, and had its own Amazon tracking identifier code.

81.     At that time and continuing through the time of the collision at issue, Defendant Kubaev, Defendant Annakulov, and Defendant Timur Trucking were utilizing and under the dispatch of the Amazon Defendants through the Amazon Relay system or a similar such Amazon system and in use of the Amazon Relay app or an equivalent such Amazon app or were otherwise under the dispatch and direction and control of the Amazon Defendants.

82.     Defendants Kubaev and Annakulov, while under the direction and control of the Amazon Defendants, negligently, recklessly, and wantonly crossed from the southbound lane of US 287, heading on into the northbound lane, traveling on the wrong side of the roadway on a separate highway.

83.     Plaintiffs' decedent, Noah M. Leyman, was lawfully driving northbound on the US 287 road, in the correct direction. Mr. Leyman's legal wife, Ms. Leyman, was lawfully seated in the passenger seat of the vehicle operated by Mr. Leyman.

84.     Defendants carelessly, negligently, recklessly, and wantonly struck Mr. Leyman's vehicle head-on, causing pre-impact terror, physical and mental pain and suffering, and injury to Mr. Leyman, as well as killing Mr. Leyman and causing pre-impact terror, scarring, and seriously physically and mentally injuring Ms. Leyman.

85.     At all times relevant, Defendants Kubaev, Adilov, and Annakulov were officers, directors, employees, agents, and legal representatives of Defendant Timur Trucking and the Amazon Defendants, acting in the course and scope of their agency and employment with said defendants.

86.     At all times relevant, Defendants Kubaev, Annakulov, and Adilov, as well as Timur Trucking, LLC, were working under the direction, control, and or right to control of the Amazon Defendants, in part through the use of the Amazon "Relay" app or a similar such app promulgated by Amazon Defendants.

87.     At the time of the crash, Defendants Kubaev, Annakulov, and Adilov, as well as Defendant Timur Trucking, were acting within the course and scope of their employment, agency, apparent agency, and service of the Amazon Defendants' control or right to control, such that they should be considered the actual and statutory employer, agent, apparent agent, and servant of one or more of the Amazon Defendants.

## COUNT I
## NEGLIGENCE/RECKLESSNESS/VICARIOUS LIABILITY
### *All Defendants*

88.     Plaintiff hereby adopts and incorporates all preceding paragraphs as though set out in their entirety herein.

89.     On the date of the crash made the basis of this lawsuit, Defendants Kubaev and Annakulov negligently, recklessly, and wantonly caused the vehicle they were operating to collide with Plaintiffs' vehicle, causing pre-impact terror, physical and mental suffering, and severe injury to Plaintiff Jurnee Leyman and pre-impact terror, physical and mental suffering, and severe injuries causing the death of Plaintiff's decedent, Noah M. Leyman.

90.     Among other things, these Defendants, through both their direct actions and indirect actions, negligently, recklessly, and wantonly failed to:

a)  Maintain reasonable and safe control of his vehicle;

b)  Follow pavement markers and road signs;

c)  Failed to follow the directives of law enforcement officers;

d) Failed to operate in proper directional lanes of travel;

e) Keep a proper lookout;

f) Exercise due care;

g) Safely maneuver his commercial vehicle;

h) Avoid becoming a hazard to the motoring public;

i) Remain reasonably alert;

j) Drive without confusion;

k) Drive without distraction;

l) Drive while not fatigued;

m) Drive while medically, physically, and mentally fit;

n) Comply with the minimum safety standards required by the Federal Motor Carrier Safety Regulations;

o) Drive at a speed allowing him to stop the commercial motor vehicle when approaching an oncoming vehicle.

91. At all times relevant and material to this lawsuit, Defendant Kubaev acted with the course and scope of his agency and employment with Defendant Timur Trucking, the Amazon Defendants, and Defendants Annakulov and Adilov.

92. At all times relevant and material to this lawsuit, Amazon Defendants controlled and had a right to control the manner of the details of the activities and conduct of Defendant Timur Trucking and Defendant Kubaev, Annakulov and Adilov —including about the operation of the motor vehicle at issue—such that an employment, servant, and agency relationship existed between (i) Amazon Defendants, and (ii) Defendants Timur Trucking and Kubaev.

93. Defendants Timur Trucking, Kubaev, Annakulov, and Adilov did not exercise a right of control over the activities and conduct of the Amazon Defendants.

94. Defendants Kubaev, Annakulov, and Adilov's actions in this case were controlled by and directed toward attaining the objective of the Amazon Defendants and Timur Trucking.

95. As a direct or proximate consequence of the negligence, recklessness, and wantonness of Defendants aforementioned, Plaintiff Jurnee Leyman was caused to suffer severe mental and physical injuries and damages including, but not limited to pre-impact terror, physical injuries, permanent and substantial physical deformity, scarring, loss of a bodily organ system, permanent physical function injury that prevents Ms. Leyman from being able to independently care for self and perform life-sustaining activities, mental anguish, emotional distress, and the loss of consortium of her husband.

96. As a direct or proximate consequence of the negligence, recklessness, and wantonness of the Defendants aforementioned, Plaintiff's decedent, Noah M. Leyman, suffered pre-impact terror, scarring, permanent and substantial physical deformity, and severe mental and physical injuries that led to his death.

97. Plaintiffs allege that the negligent, reckless, and wanton conduct of Defendants directly and proximately caused Plaintiff's damages as alleged above.

98. As the employer of Defendants Kubaev, Adilov, and Aannakulov, Defendant Timur Trucking is vicariously liable to Plaintiffs for the negligent, reckless, and wanton conduct of the individual Defendants.

99. As Defendants Kubaev, Adilov, Aannakulov, and Timur Trucking were the agents, servants, or employees of the Amazon Defendants, the Amazon Defendants are likewise vicariously liable to Plaintiffs for the negligent, reckless, and wanton conduct of those Defendants.

100. Defendants Kubaev, Adilov, and Aannakulov, and Timur Trucking's wrongful conduct constitutes *prima facie* evidence of negligence and negligence *per se* and was the

proximate cause of the collision with Mr. Leyman's vehicle and the resulting harm and damage to Mr. Leyman's property and person, for which Mr. Leyman is entitled to damages.

101.    At all times relevant, Plaintiff Jurnee Leyman, and Plaintiff's decedent, Noah M. Leyman, acted reasonably and prudently, with due caution and regard for applicable traffic laws.

## COUNT II
## NEGLIGENT HIRING, TRAINING, RETENTION, AND SUPERVISION
### *Amazon Defendants and Timur Trucking, LLC*

102.    Plaintiff hereby adopts and incorporates all preceding paragraphs as though set out in their entirety herein.

103.    The tractor-trailer involved in the subject collision constituted a commercial motor vehicle operated by and under the direct control of Defendants Kubaev, Annakulov, Adilov, Timur Trucking, and the Amazon Defendants.

104.    The vehicle and trailer were owned and leased by Timur Trucking and the Amazon Defendants, respectively. They were being used on behalf of and for the benefit of Timur Trucking, Defendants Kubaev, Annakulov, Adilov, and the Amazon Defendants at all times relevant.

105.    The operation, maintenance, and control of the tractor-trailer were governed, licensed, supervised, and regulated by State and Federal regulations, and as such, was under a certificate of authority given to Timur Trucking and to operate such vehicles on designated routes and to carry goods for hire by the FMCSA and other government regulatory body.

106.    Defendants Timur Trucking, Kubaev, Annakulov, Adilov, and Amazon Defendants had a duty to use reasonable care to select servants, employees, and agents who were competent and fit to perform the duties required of an employee or agent.

107. Defendants Timur Trucking, Kubaev, Annakulov, Adilov, and Amazon Defendants knew, or should have known, that Defendants Kubaev and Annakulov would likely operate a motor vehicle in a negligent, reckless, and wanton manner.

108. Defendants Timur Trucking, Kubaev, Annakulov, Adilov, and Amazon Defendants knew, or should have known, that Defendant Kubaev and Annakulov were not competent or fit for the duties required of them as an employee, servants, and agents.

109. Defendants Timur Trucking, Kubaev, Annakulov, Adilov, and Amazon Defendants breached their duty to use reasonable care to select, train, retain, and supervise an employee, servant, and agent who was competent and fit for the position.

110. Defendant Timur Trucking and the Amazon Defendants specifically owed such a duty to all individuals who would foreseeably encounter Defendant Timur Trucking and the Amazon Defendants' employees and agent, including individuals on or near the roadways upon which Defendants Kubaev and Annakulov operated a vehicle in the course and scope of their agency and employment with Defendant Timur Trucking and the Amazon Defendants, such as Plaintiff Jurnee Leyman and Plaintiff's decedent, Noah M. Leyman.

111. Defendants Timur Trucking, Kubaev, Annakulov, Adilov, and Amazon Defendants breached their duties to ensure their drivers and vehicles were reasonably safe and, therefore, were negligent, reckless, and wanton in one or more of the following ways:

a) Failing to properly train Defendants Kubaev and Annakulov on safe driving procedures, keeping a proper lookout, obeying traffic, and road markings, and not driving on the wrong side of the roadway;

b) Failing to ensure that Defendants Kubaev and Annakulov safely operated the commercial motor vehicle and abided by all laws governing the safe operation of commercial motor vehicles;

c) Failing to properly supervise Defendants Kubaev and Annakulov and identify driving behaviors and safety procedures for road conditions; and,

      d)  Failing to follow USDOT requirements applicable to commercial motor vehicles like that driven by Defendants Kubaev and Annakulov.

112.    As a direct and proximate consequence of Defendant Timur Trucking and Amazon Defendants' negligence, recklessness, and wantonness in hiring, training, retaining, and supervising of Defendants Kubaev and Annakulov, Plaintiff Jurnee Leyman was injured as described herein, and Plaintiff's decedent, Noah M. Leyman, was injured and killed as described herein.

113.    Amazon Defendants had a duty to use reasonable care to select an agent who was competent and fit to perform the duties required of its agent.

114.    Amazon Defendants knew, or should have known, that Defendants Timur Trucking, Kubaev, Annakulov, and Adilov would likely operate or control a motor vehicle in a negligent, reckless, and wanton manner.

115.    Amazon Defendants knew, or should have known, that Defendants Timur Trucking, Kubaev, Annakulov, and Adilov were or were not competent or fit for the duties required of Amazon Defendants' agent.

116.    Amazon Defendants breached their duty to use reasonable care to select, train, retain, and supervise servants, agents, and employees who were competent and fit for the position.

117.    Amazon Defendants specifically owed such a duty to all individuals who would foreseeably encounter Amazon Defendants' agents and servants, including individuals on or near the roadways upon which Defendants Kubaev and Annakulov operated a vehicle for the benefit of Amazon Defendants, such as Plaintiff Jurnee Leyman and Plaintiff's decedent, Noah M. Leyman.

118.    As a direct or proximate consequence of the negligence, recklessness, and wantonness of Defendants aforementioned, Plaintiff Jurnee Leyman was caused to suffer severe

mental and physical injuries and damages including, but not limited to pre-impact terror, physical injuries, permanent and substantial physical deformity, scarring, loss of a bodily organ system, permanent physical function injury that prevents Ms. Leyman from being able to independently care for self and perform life-sustaining activities, mental anguish, emotional distress, and the loss of consortium of her husband.

119.    As a direct or proximate consequence of the negligence, recklessness, and wantonness of the Defendants aforementioned, Plaintiff's decedent, Noah M. Leyman, suffered pre-impact terror, scarring, permanent and substantial physical deformity, and severe mental and physical injuries that led to his death.

<u>**COUNT III**</u>
<u>**NEGLIGENT ENTRUSTMENT**</u>
***Timur Trucking***

120.    Plaintiff hereby adopts and incorporates all preceding paragraphs as though set out in their entirety herein.

121.    Defendant Timur Trucking negligently, recklessly, and wantonly entrusted a tractor-trailer to Defendants Kubaev and Annakulov when it knew, or by the exercise of reasonable care should have known, that these Defendants were incompetent to use the said vehicle at the time of this collision.

122.    As a direct or proximate consequence of the negligence, recklessness, and wantonness of Defendants aforementioned, Plaintiff Jurnee Leyman was caused to suffer severe mental and physical injuries and damages including, but not limited to pre-impact terror, physical injuries, permanent and substantial physical deformity, scarring, loss of a bodily organ system, permanent physical function injury that prevents Ms. Leyman from being able to independently care for self and perform life-sustaining activities, mental anguish, emotional distress, and the loss

of consortium of her husband.

123.    As a direct or proximate consequence of the negligence, recklessness, and wantonness of the Defendants aforementioned, Plaintiff's decedent, Noah M. Leyman, suffered pre-impact terror, scarring, permanent and substantial physical deformity, and severe mental and physical injuries that led to his death.

**COUNT IV**
**NEGLIGENT ENTRUSTMENT AND NEGLIGENT HIRING**
***Amazon Defendants***

124.    Plaintiff hereby adopts and incorporates all preceding paragraphs as though set out in their entirety herein.

125.    As an entity engaged in the transportation of goods and subject to Federal Motor Carrier Safety Administration rules and regulations, Amazon Defendants had a duty to investigate the motor carriers it was hiring before allowing the motor carrier to transport its products.

126.    Amazon Defendants acted as a "motor carrier" under Ohio Rev. Code Ann. § 4921.01.

127.    Amazon Defendants, by and through its employees, agents, related entities, affiliates, and contractors, as an integral part of its business and promises to customers for the prompt delivery of goods, was regularly engaged in the transportation industry and arranging for the transportation of goods and the movement of freight and produce in intrastate and interstate commerce throughout the United States of America.

128.    Amazon Defendants undertook a duty to investigate, qualify, monitor, and select motor carriers, like Timur Trucking, as qualified motor carriers to move freight in interstate commerce for its customers.

129.     Amazon Defendants had non-delegable duties to act as a reasonable transportation shipper in the qualifying, monitoring, and selecting of reasonably safe interstate motor carriers to transport their freight.

130.     Amazon Defendants, through their unique business model, exercised and retained the right to control the movement of its goods and controlled and monitored the motor carriers and actual drivers delivering their freight.

131.     Amazon Defendants directly and knowingly hired Defendant Timur Trucking through the Amazon "Relay" platform.

132.     Amazon Defendants had to enter a contract with Timur Trucking before Timur Trucking, LLC could obtain an Amazon trailer and haul loads for Amazon.

133.     Before the collision and Amazon Defendants contracting with Defendant Timur Trucking, Timur Trucking demonstrated through its FMCSA safety violations that it has a pattern of acting negligently and unsafely.



CARRIER MEASURE OVER TIME     INSPECTION RESULTS

**– VIOLATION SUMMARY**

**Unsafe Driving Violations: 4**

| Violations | Description | # Violations | # OOS Violations | Violation Severity Weight |
|---|---|---|---|---|
| 392.2-SLLS3 | State/Local Laws - Speeding 11-14 miles per hour over the speed limit. | 1 | 0 | 7 |
| 392.22(a) | Failing to use hazard warning flashers | 1 | 0 | 1 |
| 392.2LV | Lane Restriction violation | 1 | 0 | 3 |
| 392.2PK | Unlawfully parking and/or leaving vehicle in the roadway | 1 | 0 | 1 |

**– INSPECTION HISTORY**

**Driver Inspections with Unsafe Driving Violations: 3**

| | Report | | | Vehicle | | | Measure = | Sum of the Total Weight (TotW) Avg. PU × UF = 8.3 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Inspection Date | Number | State | Plate Number | Plate State | Type | | Severity Weight (SW) | Time Weight (TiW) | Total Weight (TotW) | |
| 8/14/2023 | VA5233001192 | VA | | PWW4049 | OH | Truck Tractor | 2 | 3 | 6 | |
| Violation: 392.22(a) Failing to use hazard warning flashers | | | | | | | 1 | | | |
| Violation: 392.2PK Unlawfully parking and/or leaving vehicle in the roadway | | | | | | | 1 | | | |
| Sum of Violation Weight => Inspection Severity Weight (SW) | | | | | | | 2 | | | |
| 7/10/2023 | PAK312319114 | PA | | PWY2573 | OH | Truck Tractor | 3 | 3 | 9 | |
| Violation: 392.2LV Lane Restriction violation | | | | | | | 3 | | | |
| 3/2/2023 | LALAPQ001037 | LA | | PWW4049 | OH | Truck Tractor | 7 | 3 | 21 | |
| Violation: 392.2-SLLS3 State/Local Laws - Speeding 11-14 miles per hour over the speed limit. | | | | | | | 7 | | | |



**CARRIER MEASURE OVER TIME**  | INSPECTION RESULTS

**— VIOLATION SUMMARY** | Vehicle Maint. Violations: 9

| Violations | Description | # Violations | # OOS Violations | Violation Severity Weight |
|---|---|---|---|---|
| 393.9 | Inoperable Required Lamp | 2 | 0 | 2 |
| 393.45DLPC | Brake Connections with Leaks - Connection to Power Unit | 1 | 0 | 4 |
| 393.55(e) | No or Defective ABS Malfunction Indicator Lamp for trailer manufactured after 03/01/1998 | 1 | 0 | 4 |
| 393.60EWS | Windshield - Obstructed | 1 | 0 | 1 |
| 393.75(a) | Flat tire or fabric exposed | 1 | 1 | 8 |
| 393.75(a)(3) | Tire-flat and/or audible air leak | 1 | 1 | 8 |
| 393.9(a) | Inoperative Brake Lamps | 1 | 1 | 6 |
| 393.9TS | Inoperative turn signal | 1 | 1 | 6 |

**— INSPECTION HISTORY** | Vehicle Inspections: 15

Please select to view your Inspection History. You can also sort your data by Date, Report Number, Vehicle Type, etc.

○ Vehicle Inspections
15 *(or)* ● With Vehicle Maint. Violations (5)
○ Without Vehicle Maint. Violations (10)

| Report | | | Vehicle | | | | Measure = | Sum of the Total Weight (TotW) Sum of the Time Weight (TiW) | |
|---|---|---|---|---|---|---|---|---|---|
| Inspection Date | Number | State | Plate Number | Plate State | Type | | Severity Weight (SW) | Time Weight (TiW) | Total Weight (TotW) |
| 7/3/2023 | NV7181020686 | NV | PWW4049 | OH | Truck Tractor | | 10 | 3 | 30 |
| Violation: | 393.75(a) Flat tire or fabric exposed (OOS) | | | | | | 8 + 2 (OOS) | | |
| 6/15/2023 | NV9368021261 | NV | 2993345 | IN | Truck Tractor | | 15 | 3 | 45 |
| Violation: | 393.9 Inoperable Required Lamp | | | | | | 2 | | |
| Violation: | 393.9TS Inoperative turn signal (OOS) | | | | | | 6 + 2 (OOS) | | |
| Violation: | 393.45DLPC Brake Connections with Leaks - Connection to Power Unit | | | | | | 4 | | |
| Violation: | 393.60EWS Windshield - Obstructed | | | | | | 1 | | |
| | Sum of Violation Weight => Inspection Severity Weight (SW) | | | | | | 15 | | |
| 6/12/2023 | MOSLC1002756 | MO | PWT2283 | OH | Truck Tractor | | 12 | 3 | 36 |
| Violation: | 393.55(e) No or Defective ABS Malfunction Indicator Lamp for trailer manufactured after 03/01/1998 | | | | | | 4 | | |
| Violation: | 393.9(a) Inoperative Brake Lamps (OOS) | | | | | | 6 + 2 (OOS) | | |
| | Sum of Violation Weight => Inspection Severity Weight (SW) | | | | | | 12 | | |
| 5/22/2023 | OKPE13175795 | OK | PWV4011 | OH | Truck Tractor | | 10 | 3 | 30 |
| Violation: | 393.75(a)(3) Tire-flat and/or audible air leak (OOS) | | | | | | 8 + 2 (OOS) | | |
| 12/8/2022 | NM4360M9I92Q | NM | PWV7382 | OH | Truck Tractor | | 2 | 2 | 4 |
| Violation: | 393.9 Inoperable Required Lamp | | | | | | 2 | | |

## VIOLATION SUMMARY — Violations: 13

| Violations | Description | # Violations | # OOS Violations | Violation Severity Weight | BASIC |
|---|---|---|---|---|---|
| 392.22(a) | Failing to use hazard warning flashers | 1 | 0 | 1 | Unsafe Driving |
| 392.2LV | Lane Restriction violation | 1 | 0 | 3 | Unsafe Driving |
| 392.2PK | Unlawfully parking and/or leaving vehicle in the roadway | 1 | 0 | 1 | Unsafe Driving |
| 392.2-SLLS3 | State/Local Laws - Speeding 11-14 miles per hour over the speed limit. | 1 | 0 | 7 | Unsafe Driving |
| 393.45DLPC | Brake Connections with Leaks - Connection to Power Unit | 1 | 0 | 4 | Vehicle Maint. |
| 393.55(e) | No or Defective ABS Malfunction Indicator Lamp for trailer manufactured after 03/01/1998 | 1 | 0 | 4 | Vehicle Maint. |
| 393.60EWS | Windshield - Obstructed | 1 | 0 | 1 | Vehicle Maint. |
| 393.75(a) | Flat tire or fabric exposed | 1 | 1 | 8 | Vehicle Maint. |
| 393.75(a)(3) | Tire-flat and/or audible air leak | 1 | 1 | 8 | Vehicle Maint. |
| 393.9 | Inoperable Required Lamp | 2 | 0 | 2 | Vehicle Maint. |
| 393.9(a) | Inoperative Brake Lamps | 1 | 1 | 6 | Vehicle Maint. |
| 393.9TS | Inoperative turn signal | 1 | 1 | 6 | Vehicle Maint. |

## INSPECTION HISTORY — Total Inspections: 23

| | Report | | Vehicle | | | Measure | |
|---|---|---|---|---|---|---|---|
| Inspection Date | Number | State | Plate Number | Plate State | Type | Severity Weight (SW) | Time Weight (TW) |
| 8/14/2023 | VA5233001192 | VA | PWW4049 | OH | TRUCK TRACTOR | | 3 |
| Unsafe Driving Violation: 392.2PK Unlawfully parking and/or leaving vehicle in the roadway | | | | | | 1 | |
| Unsafe Driving Violation: 392.22(a) Failing to use hazard warning flashers | | | | | | 1 | |
| 7/10/2023 | PAK312319114 | PA | PWY2573 | OH | TRUCK TRACTOR | | 3 |
| Unsafe Driving Violation: 392.2LV Lane Restriction violation | | | | | | 3 | |
| 7/3/2023 | NV7181020696 | NV | PWW4049 | OH | TRUCK TRACTOR | | 3 |
| Vehicle Maint. Violation: 393.75(a) Flat tire or fabric exposed (OOS) | | | | | | 8 + 2 (OOS) | |
| 6/30/2023 | AZ0Y6E000084 | AZ | PWU7268 | OH | TRUCK TRACTOR | | 3 |
| 6/15/2023 | NV8398021261 | NV | 2993345 | IN | TRUCK TRACTOR | | 3 |
| Vehicle Maint. Violation: 393.45DLPC Brake Connections with Leaks - Connection to Power Unit | | | | | | 4 | |
| Vehicle Maint. Violation: 393.9 Inoperable Required Lamp | | | | | | 2 | |
| Vehicle Maint. Violation: 393.9TS Inoperative turn signal (OOS) | | | | | | 6 + 2 (OOS) | |
| Vehicle Maint. Violation: 393.60EWS Windshield - Obstructed | | | | | | 1 | |
| 6/12/2023 | MOSLC1002756 | MO | PWT2283 | OH | TRUCK TRACTOR | | 3 |
| Vehicle Maint. Violation: 393.9(a) Inoperative Brake Lamps (OOS) | | | | | | 6 + 2 (OOS) | |
| Vehicle Maint. Violation: 393.55(e) No or Defective ABS Malfunction Indicator Lamp for trailer manufactured after 03/01/1998 | | | | | | 4 | |
| 6/4/2023 | TX6LN40ETD1K | TX | PWW4011 | OH | TRUCK TRACTOR | | 3 |
| 5/25/2023 | NV7033021842 | NV | PWV7135 | OH | TRUCK TRACTOR | | 3 |
| 5/22/2023 | OKPE13175795 | OK | PWW4011 | OH | TRUCK TRACTOR | | 3 |
| Vehicle Maint. Violation: 393.75(a)(3) Tire-flat and/or audible air leak (OOS) | | | | | | 8 + 2 (OOS) | |
| 5/18/2023 | CANCEB005589 | CA | PWT4397 | OH | TRUCK TRACTOR | | 3 |
| 4/9/2023 | UT23MV000331 | UT | PWW4011 | OH | TRUCK TRACTOR | | 3 |
| 3/18/2023 | NJSPPZI02908 | NJ | PWU9222 | OH | TRUCK TRACTOR | | 3 |
| 3/8/2023 | KYCV44303056 | KY | PWW6095 | OH | TRUCK TRACTOR | | 3 |
| 3/2/2023 | LALAPQ001037 | LA | PWW4049 | OH | TRUCK TRACTOR | | 3 |
| Unsafe Driving Violation: 392.2-SLLS3 State/Local Laws - Speeding 11-14 miles per hour over the speed limit. | | | | | | 7 | |
| 2/24/2023 | AR422C000271 | AR | P1101577 | IL | TRUCK TRACTOR | | 2 |
| 2/16/2023 | AR776E000174 | AR | PWU8285 | OH | TRUCK TRACTOR | | 2 |
| 12/8/2022 | NM4390M9I92Q | NM | PWY7382 | OH | TRUCK TRACTOR | | 2 |
| Vehicle Maint. Violation: 393.9 Inoperable Required Lamp | | | | | | 2 | |
| 11/27/2022 | AZ0285003014 | AZ | PWW4011 | OH | TRUCK TRACTOR | | 2 |
| 11/26/2022 | NM9520M96GT7 | NM | PWU8285 | OH | TRUCK TRACTOR | | 2 |
| 11/23/2022 | NM5084M93L8S | NM | PWU8285 | OH | TRUCK TRACTOR | | 2 |
| 11/19/2022 | TNTCTF001938 | TN | 1878F23 | TX | TRUCK TRACTOR | | 2 |
| 11/11/2022 | OH3278015101 | OH | PW8160 | OH | TRUCK TRACTOR | | 2 |
| 9/15/2022 | NM4390M76CG2 | NM | PWU7268 | OH | TRUCK TRACTOR | | 2 |

134.    Defendant Timur Trucking's recorded safety violations were available publicly upon reasonable investigation and inspection of Timur Trucking LLC's FMSCA record.

135.    Amazon Defendants breached their duties to the motoring public by selecting a dangerous and unqualified company, Timur Trucking, and its drivers, to haul freight.

136.    Amazon Defendants breached their duties to the motoring public by not recognizing the dangerous propensities of Defendant Timur Trucking and its drivers, by not using or ignoring the information available regarding Timur Trucking and its drivers, and by continuing to retain Timur Trucking and its drivers to move the Amazon Defendants' freight.

137.    Amazon Defendants breached their duties to the motoring public by failing to enact and enforce policies and procedures reasonably likely to prevent or limit motor carriers and their drivers from violating traffic laws and the FMCSRs while delivering goods for the Amazon Defendants.

138.    Amazon Defendants breached their duties and were therefore negligent in one or more of the additional ways:

   a.    Failing to perform or improperly performing background, driving record, physical fitness, and character investigations that would have revealed Timur Trucking and its drivers were unsafe and incompetent to complete the task as assigned;

   b.    Failing to verify and ensure that Timur Trucking hired drivers who would operate the tractor and trailer in a reasonably safe manner and abide by the laws governing the safe inspection and operation of commercial motor vehicles;

   c.    Failing to perform or improperly performing review, audit, and selection actions verifying Timur Trucking and its drivers were knowledgeable of and in compliance with laws governing the safe inspection and operation of commercial motor vehicles;

   d.    Failing to perform or improperly performing performance reviews and records checks that would have revealed Timur Trucking and its drivers were unfit to operate a commercial motor vehicle safely.

139.    On information and belief, Defendant Amazon breached its duties owed by failing to do a public FMCSA search of Defendant Timur Trucking's USDOT number to confirm or deny whether Defendant Timur Trucking and its drivers were fit for interstate and intrastate transportation of Amazon products.

140.    Amazon Defendants negligently controlled, hired, and retained Defendant Timur Trucking, LLC as a freight partner and negligently entrusted Defendant Timur Trucking and its drivers to pull/haul Amazon's semi-trailers, including the one being hauled by its drivers at the time of the collision with Plaintiffs.

141.    Amazon Defendants' negligent acts and omissions in controlling, contracting with, hiring, and retaining Defendant Timur Trucking and Defendants Kubaev and Annakulov is a direct and proximate cause of Plaintiffs' injuries and damages.

142.    Amazon Defendants use of its "Relay" platform and failure to adequately investigate the motor carriers and drivers it contracted with, hired, and otherwise partnered with, including Defendants Timur Trucking, Annakulov, and Kubaev, each individually, for the movement of Amazon products constitutes negligent, reckless, and wanton behavior.

143.    Instead, Amazon Defendants failed to realize and consider well-known logistics industry safety concepts. Instead, they chose profits over basic safety for the public when it contracted with Defendants Timur Trucking and its drivers and entrusted to them Amazon's semi-trailer.

144.    As a direct or proximate consequence of the negligence, recklessness, and wantonness of Defendants aforementioned, Plaintiff Jurnee Leyman was caused to suffer severe mental and physical injuries and damages including, but not limited to pre-impact terror, physical injuries, permanent and substantial physical deformity, scarring, loss of a bodily organ system,

permanent physical function injury that prevents Ms. Leyman from being able to independently care for self and perform life-sustaining activities, mental anguish, emotional distress, and the loss of consortium of her husband.

145. As a direct or proximate consequence of the negligence, recklessness, and wantonness of the Defendants aforementioned, Plaintiff's decedent, Noah M. Leyman, suffered pre-impact terror, scarring, permanent and substantial physical deformity, and severe mental and physical injuries that led to his death.

**COUNT V**
**VICARIOUS LIABILITY**
***Amazon Defendants***

146. Plaintiff hereby adopts and incorporates all preceding paragraphs as though set out in their entirety herein.

147. Amazon Defendants had a custom and practice of engaging motor carriers and drivers to perform interstate freight hauling of Amazon products.

148. Before the crash, the Amazon Defendants had already hired, selected, employed, retained, and otherwise engaged the services of Timur Trucking and its drivers to perform core tasks for and on behalf of the Amazon Defendants, including the delivery of goods in interstate commerce and on Ohio roadways.

149. Amazon Defendants utilized their Relay App or similar systems to engage motor carriers, such as Defendant Timur Trucking and its drivers.

150. Defendant Timur Trucking and its drivers utilized the Amazon Relay App, among other applications and programs, to become a motor carrier for Amazon Defendants.

151. Defendant Timur Trucking and its drivers were supposed to meet all necessary requirements on the Amazon Relay App to haul freight for the Amazon Defendants.

152.     At all times relevant, Defendant Timur Trucking and the individual defendants each utilized Amazon Defendants' trailer to haul the Amazon materials.

153.     Amazon Defendants monitored Defendant Timur Trucking's compliance, performance, and any reported issues through the Amazon Relay App, among other applications and programs.

154.     Defendant Timur Trucking and its drivers could not complete any jobs for the Amazon Defendants without utilizing the Amazon Relay App or other applications and programs.

155.     Defendant Timur Trucking and its drivers operated the Amazon trailer under the consent and control of Amazon Defendants.

156.     Amazon Defendants exercised control over Defendant Timur Trucking through the Amazon Relay App and other applications and programs, such that Amazon Defendants are vicariously liable for the negligence of Defendant Timur Trucking and its drivers.

157.      On the date of the crash, Timur Trucking and its drivers were acting as the agent of the Amazon Defendants since:

   a.  Amazon Defendants knew and acknowledged that Timur Trucking and its driver would act for and on behalf of the Amazon Defendants by delivering goods for the Amazon Defendants;

   b.  Amazon Defendants accepted that undertaking and was delivering goods for the Amazon Defendants at the time of the crash; and,

   c.  Amazon Defendants exercised control and reserved the right to exercise control over Timur Trucking and its drivers and the details of the services to be performed while acting within the scope of the agency delivering goods for the Amazon Defendants, including without limitation by controlling the route and time of delivery; and providing tools necessary to complete the transportation such as the application software to arrange for, track, communicate with, and get paid for the load in question; and by loading and providing the trailer in question.

158.     The subject crash occurred while Timur Trucking and its drivers were actively performing core tasks for and on behalf of the Amazon Defendants.

159.    As a direct or proximate consequence of the negligence, recklessness, and wantonness of Defendants aforementioned, Plaintiff Jurnee Leyman was caused to suffer severe mental and physical injuries and damages including, but not limited to pre-impact terror, physical injuries, permanent and substantial physical deformity, scarring, loss of a bodily organ system, permanent physical function injury that prevents Ms. Leyman from being able to independently care for self and perform life-sustaining activities, mental anguish, emotional distress, and the loss of consortium of her husband.

160.    As a direct or proximate consequence of the negligence, recklessness, and wantonness of the Defendants aforementioned, Plaintiff's decedent, Noah M. Leyman, suffered pre-impact terror, scarring, permanent and substantial physical deformity, and severe mental and physical injuries that led to his death.

### COUNT VI
### LOSS OF CONSORTIUM
#### *All Defendants*

161.    Plaintiff hereby adopts and incorporates all preceding paragraphs as though set out in their entirety herein.

162.    Plaintiff Jurnee Leyman is and was at all times relevant the wife of Plaintiff's decedent, Noah M. Leyman.

163.    Plaintiff Jurnee Leyman, as the wife of Noah M. Leyman and as a member of the household of Noah M. Leyman, enjoyed a close familial relationship with Noah M. Leyman.

164.    As a further direct and proximate result of the acts mentioned above of negligence, recklessness, and wantonness of each of the Defendants, Plaintiff Jurnee Leyman was caused to lose the services, society, companionship, comfort, solace, support, care, household services, aide, love, affection, consortium and other services of her husband, Noah Leyman, all to her detriment.

**REMEDIES SOUGHT**

165.    Plaintiff hereby adopts and incorporates all preceding paragraphs as though set out in their entirety herein.

166.    As a direct and proximate result of the negligence, recklessness, and wantonness of the Defendants, and each of them individually, Plaintiff and her decedent incurred and seek all available personal injury, wrongful death, and survival damages under Ohio's compensatory, wrongful death, and survival statutes.

167.    As a direct or proximate consequence of the negligence, recklessness, and wantonness of the Defendants, and each of them individually, Plaintiff Jurnee Leyman was caused to suffer severe mental and physical injuries and damages including, but not limited to pre-impact terror, physical injuries, permanent and substantial physical deformity, scarring, loss of a bodily organ system, permanent physical function injury that prevents Ms. Leyman from being able to independently care for self and perform life-sustaining activities, mental anguish, emotional distress, and the loss of consortium of her husband.

168.    As a direct or proximate consequence of the negligence, recklessness, and wantonness of the Defendants aforementioned, Plaintiff's decedent, Noah M. Leyman, suffered pre-impact terror, scarring, permanent and substantial physical deformity, and severe mental and physical injuries that led to his death.

169.    Ms. Leyman and next of kin and other heirs have suffered permanent damages and losses.

170.    As a direct and proximate result of the subject wreck and of the negligence, recklessness, and wantonness of the Defendants, and each of them, Plaintiff Jurnee Leyman,

individually, the Estate of Noah M. Leyman, Deceased, and the statutory heirs or beneficiaries of

Noah M. Leyman have suffered and incurred damages, including without limitation the following:

a) General damages in a sum over $75,000;

b) Compensatory damages over $75,000;

c) Consequential damages over $75,000;

d) Past, present, and future mental anguish, grief, mental pain and suffering, emotional stress, loss of companionship, inconvenience, and loss of affection, society, companionship, aid, comfort, services, benefits, consortium, care, assistance, attention, protection, advice, guidance, instruction, training, education and counsel of Noah M. Leyman, and impairment of the quality life resulting from the wrongful death of Noah M. Leyman;

e) Lost household services and other economic and financial losses resulting from the wrongful death of Noah M. Leyman;

f) Burial and funeral expenses for Noah M. Leyman;

g) Past, present, and future medical care and treatment, hospital and rehabilitation care and services, nursing care and services, life care and attendant services, medication, therapy, accommodations, and other medical expenses incurred by Noah M. Leyman and Jurnee Leyman after the subject wreck, including special medical damages;

h) Punitive damages;

i) Any other losses and damages sustained by the Estate of Noah M. Leyman, Deceased, and his next of kin and heirs to which it is legally entitled either under statute or the common law, including costs and attorneys' fees;

j) All damages available for wrongful death;

k) Any other losses and damages sustained by Jurnee Leyman, individually, to which she is entitled either under statute or the common law, including costs and attorneys' fees; and,

l) Any other losses and damages sustained by the next of kin, statutory heirs, or beneficiaries of Noah M. Leyman, to which such persons are entitled either under statute or the common law, including costs and attorneys' fees.

**WHEREFORE**, Plaintiff prays for Judgment against the Defendants, and each of them, in

an amount to be determined at trial and for the costs of this suit, pre-judgment and post-judgment

interest, costs and expert witness fees, and for such other and further relief as the Court may deem

just and proper.

**<u>PLAINTIFFS HEREBY DEMAND TRIAL BY JURY ON ALL TRIABLE ISSUES</u>**

This 19th day of December 2023.

**McCarthy, Lebit, Crystal & Liffman Co., LPA**

**/s/** Christian R. Patno, Esq.
Christian R. Patno, Esq.
Ohio Bar No. 0047380

1111 Superior Avenue East
Suite 2700
Cleveland, Ohio 44114
Phone: 216.696.1422
Facsimile: 216.696.1210
Email: crp@mccarthylebit.com

**TURNBULL, HOLCOMB & LEMOINE, P.C.**

/s/ *M. Alan Holcomb*
M. Alan Holcomb
Ohio Bar No. 98308 (*pro hac vice* to be filed)
D. Brett Turnbull
Georgia Bar No. 421898 (*pro hac vice* to be filed)
*Attorneys for Plaintiff*

945 East Paces Ferry Road NE
Suite 2275
Atlanta, GA 30326
Phone: (404) 793-2566
Facsimile: (404) 348-4260
Email: aholcomb@turnbullfirm.com
         bturnbull@turnbullfirm.com

# EXHIBIT 1

IN THE PROBATE COURT OF _____HOUSTON_____ COUNTY
STATE OF GEORGIA

IN RE: ESTATE OF                          )
                                          )
NOAH MICHAEL LEYMAN          ,            )     ESTATE NO. 2023-ES-361
DECEASED                                  )

## LETTERS OF ADMINISTRATION
*[Bond waived and/or certain powers granted]*

At a regular term of probate court, this Court granted an order allowing JURNEE SCOTT LEYMAN to qualify as administrator(s) of the above-named decedent, who was domiciled in this county at the time of his or her death or was domiciled in another state but owned property in this county at the time of his or her death, and that upon so doing, letters of administration be issued to such personal representative(s).

THEREFORE, the said administrator(s), having taken the oath of office and complied with all necessary prerequisites of the law, is/are legally authorized to discharge all the duties and exercise all powers of personal representative(s), according to Georgia law. In addition this Court:

*[Initial all that apply]*

KWH  (a)  ***POWERS GRANTED:*** Grants to the administrator(s) all of the powers contained in O.C.G.A. § 53-12-261, except the administrator(s) shall not be authorized to bind the estate by any warranty in any conveyance or contract in violation of O.C.G.A. § 53-8-14 (a).

KWH  (b)  ***REPORTS WAIVED:*** Grants to the administrator(s) the specific power to serve without making and filing inventory, and without filing any annual or other returns or reports to any court.

KWH  (c)  ***BOND WAIVED:*** Waives the specific requirement to post bond.

KWH  (d)  ***STATEMENTS WAIVED:*** Grants to the administrator(s) the specific power to serve without furnishing to the heirs statements of receipts and disbursements.

IN TESTIMONY WHEREOF, I have hereunto affixed my signature as judge of the probate court of said county and the seal of this office this 13th day of September , 2023 .

_____
Judge of the Probate Court

*The following must be signed if the judge
does not sign the original of this document:*

Issued by:                                   *[Seal]*

*Brittany Eaton*
Clerk of the Probate Court

FILED IN OFFICE
SEP 13 2023
HOUSTON COUNTY PROBATE COURT
Received by: BE

GPCSF 3                                [12]                    Eff. July 2021

**IN THE PROBATE COURT OF** _____ HOUSTON _____ **COUNTY**
**STATE OF GEORGIA**

IN RE: ESTATE OF                                )
                                                           )
NOAH MICHAEL LEYMAN _____, )    **ESTATE NO.** 2023-ES-361
**DECEASED**                                  )

### ORDER APPOINTING ADMINISTRATOR

A petition for letters of administration for the above named decedent was filed.

JURNEE SCOTT LEYMAN _____ was/were nominated administrator(s) in the petition and is/are hereby found to be legally qualified for said office. The Court finds that the decedent died domiciled within, or domiciled outside the State of Georgia but owning property within, the above county. The Court finds that the decedent died intestate. The Court further finds that all of the heirs at law were served or acknowledged service. The Court further finds that no objection has been filed, and all requirements of law have been fulfilled.

ACCORDINGLY, IT IS ORDERED that the person(s) named above is/are found to be qualified for such office and is/are hereby appointed administrator(s) of the estate of the decedent, and that appropriate letters be issued upon said administrator(s) giving bond with approved surety in the sum of $ N|A _____ and taking the oath as provided by law. The administrator(s) shall not make any distribution to a person for the benefit of a minor unless that person is qualified to receive such funds according to law.

IT IS FURTHER ORDERED that upon unanimous consent and publication of notice as necessary, the Court hereby: *[Initial all that apply]*

KWH  (a)  ***POWERS GRANTED***: Grants to the administrator(s) all of the powers contained in O.C.G.A. § 53-12-261, except the administrator(s) shall not be authorized to bind the estate by any warranty in any conveyance or contract in violation of O.C.G.A. § 53-8-14 (a).

KWH  (b)  ***REPORTS WAIVED***: Grants to the administrator(s) the specific power to serve without making and filing inventory, and without filing any annual or other returns or reports to any court.

KWH  (c)  ***BOND WAIVED***: Waives the specific requirement to post bond.

KWH  (d)  ***STATEMENTS WAIVED***: Grants to the administrator(s) the specific power to serve without furnishing to the heirs statements of receipts and disbursements.

SO ORDERED this 13TH   day of September _____, 2023

_____
Judge of the Probate Court

FILED IN OFFICE
SEP 13 2023
HOUSTON COUNTY PROBATE COURT
Received by: BK

GPCSF 3                                        [11]                                Eff. July 2021